UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO, DARIN
JEFFERS, MICHAEL O'TOOLE, MICHAEL BOURGAL,
FRANK H. FINKEL, JOSEPH A. FERRARA, SR., MARC
HERBST, THOMAS CORBETT and ROBERT G.
WESSELS, *as Trustees and Fiduciaries of the Local 282*
*Welfare Trust Fund, the Local 282 Pension Trust Fund, the*
*Local 282 Annuity Trust Fund, the Local 282 Job Training*
*Trust Fund, and the Local 282 Vacation and Sick Leave*
*Trust Fund,*

|  |  |
|---|---|
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| -against- | CV 20-4864 (ARR) (ARL) |

BURTIS CONSTRUCTION CO., INC. and XYZ
ENTITIES 1-10, *all whose true names are unknown,*
*constituting members of a controlled group of corporations*
*or business entities or trades or businesses under common*
*control with BURTIS CONSTRUCTION CO., INC.,*

                                        Defendants.
------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

This matter was referred to the undersigned by District Judge Ross for the purpose of

issuing a report and recommendation on whether the pending motion for a default judgment

should be granted and, if so, the appropriate relief to be awarded to the plaintiffs.   The plaintiffs

have submitted a memorandum of law and the declarations of Arthur J. Muller, III, Esq., Stern

Wong, Mario Bulding and Nora Jimbo, along with exhibits, in support of their motion.   Despite

having been served with the motion, the defendant, Burtis Construction Co., Inc. ("Burtis"), has

not submitted papers in opposition.   Based upon the evidence submitted, the undersigned

recommends that a default judgment be granted as against Burtis and the plaintiffs be awarded

the following: $544,315.00 in withdrawal liability; $424,655.18 in interest on the withdrawal

1

liability calculated from March 1, 2017 through June 30, 2021, plus $268.43 per day accruing from July 1, 2021; $424,655.18 in liquidated damages on the withdrawal liability; $26,975.51 in unpaid contributions; $26,734.93 in interest on unpaid contributions as determined by Audit No. 17-0023, through June 30, 2021, plus $13.30 per day accruing from July 1, 2021; $26,734.93 in liquidated damages on unpaid contributions as determined by Audit No. 17-0023; $700.00 in audit costs; $4.020.00 in attorneys' fees and $1,070.20 in costs.

## BACKGROUND

The plaintiffs are the trustees and fiduciaries of several employee benefit plans (the "Funds") within the meaning of Section 3(3) and (37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002(3), 1002(37).   Compl. ¶¶ 3-4. The Funds are jointly administered by a board of trustees with equal numbers of labor and management representatives in accordance with Section 302(c)(5) of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c)(5).   *Id.* ¶ 5.   The Funds were established pursuant to various collective bargaining agreements ("CBAs") between Building Material Teamsters Local 282 ("Local 282") and various employers who were required to make contributions to the Funds on behalf of their workers covered by the CBAs.   *Id.* ¶ 6.   The Funds are maintained pursuant to the terms of an Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated by reference into the CBAs.   *Id.* ¶ 7.   The Funds provide various pension, health and welfare, annuity, job training, vacation and sick leave and legal services benefits to covered workers, retirees and their dependents.[1] *Id.*

---

[1] The CBAs and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).   Compl. ¶ 8.   The Funds are third-party beneficiaries of the CBAs.   *Id.*

Burtis has been signatory to a series of CBAs with Local 282 and, most recently the New York City Heavy Construction and Excavating Agreements for the periods July 1, 2009 through June 30, 2013 and July 1, 2013 through June 30, 2017.  *Id.* ¶ 13.   Pursuant to those agreements, Burtis is also bound to the terms of the Trust Agreement governing the Funds.  *Id.* ¶ 14.   The CBAs and Trust Agreement require employers, such as Burtis, to pay contributions to the Funds on behalf of its employees who are covered by the agreements.  *Id.* ¶ 17.   To this end, Burtis was required to submit detailed written reports ("remittance reports") to the Funds which identify those employees who performed work covered by the CBAs.  *Id.* ¶ 16.   Specifically, Burtis was compelled to state the number of hours each such employee worked in covered employment.  *Id.* Burtis failed to submit remittance reports for November 2015 and after September 2016.  *Id.* ¶ 41.

Pursuant to the Trust Agreement, Burtis was also required to submit to periodic audits of its pertinent books and records.  *Id.* ¶ 21.   Specifically, Article IX, Section 1(d) of the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any [e]mployer in connection with" the employer's contributions to the Funds.  *Id.*   Where an audit discloses a delinquency, an employer, in addition to paying the contributions identified as being owed, is required under Article IX, Section 3 of the Trust Agreement to pay interest on the amount of contributions due, plus liquidated damages, audit fees, attorneys' fees, and costs.  *Id.* ¶ 25.   Prior to the filing of this action, Burtis submitted its books and records for the period December 31, 2014 through December 31, 2015 for an audit.  *Id.* ¶ 44.   The Funds' auditors reviewed Burtis' pertinent books and records and prepared audit #17-0023.  *Id.*   Burtis was found to owe $26,975.51 in unpaid contributions, $3,095.04 in interest as of August 17, 2016

3

and an audit fee of $700.00.  *Id.* ¶ 45.  To date, audit #17-0023 remains unpaid.  *Id.* ¶ 46.  By

letter dated April 6, 2017, the Funds also demanded Burtis to submit to audit for the period

commencing January 1, 2016.  *Id.* ¶ 47.  Burtis refused to cooperate with the audit and failed to

produce its pertinent books and records for that audit.  *Id.* ¶ 48.

   Finally, Article XI, Section 1(a) of the Trust Agreement provides: "[a]n [e]mployer that

withdraws from the Pension Plan after April 28, 1980, in either a complete or partial withdrawal,

shall owe and pay withdrawal liability to the Plan as determined under [that] Article and

[ERISA] and the Pension Protection Act of 2006." *Id*. ¶ 31.  On October 15, 2015, Burtis

permanently ceased to have an obligation to remit contributions to the 282 Pension Trust Fund

and ceased covered operations and became subject to withdrawal liability under and the Pension

Protection Act of 2006.  *Id*. ¶ 30.  Fifteen months later, on January 10, 2017, the Funds sent

Burtis an initial Notice of Actual Withdrawal.  *Id.* ¶ 32.  Shortly thereafter, on or about

February 3, 2017, the Funds sent Burtis a Notice and Demand for Payment of Withdrawal

Liability, demanding that Burtis pay withdrawal liability in monthly installment payments of

$13,079.69 per month beginning March 1, 2017 for 46 months, plus a final payment of

$4,307.42.  *Id.* ¶ 33.  The total withdrawal liability assessed by the plaintiffs was $544,315.00.

*Id.* ¶ 34.

   Burtis did not make any payments toward its withdrawal liability.  *Id.* ¶ 35.  Nor did it

request that the Funds review any specific matter relating to the determination of its withdrawal

liability or the schedule of payments.  *Id*.  Accordingly, by letter dated March 8, 2017, the

Funds demanded that Burtis cure the default in payment within sixty days.  *Id.* ¶ 36.  They also

advised Burtis that if it did not timely cure the default, the Funds would seek to accelerate the

entire withdrawal liability balance.   *Id.*   Burtis did not cure its default and, to date, has not made any payments toward its withdrawal liability.   *Id.* ¶ 37.   In addition, Burtis has never requested review of the withdrawal liability assessment or challenged the assessment via arbitration.   *Id.* ¶ 38.

On October 9, 2020, the plaintiffs commenced this lawsuit seeking to recover unpaid contributions, withdrawal liability and attendant damages owed by Burtis pursuant to ERISA and the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.   ECF No. 1.   Burtis was served a copy of the summons and complaint by service on the New York State Secretary of State on November 18, 2020.   *See* Muller Decl. Ex. 2, ECF No. 7.   Burtis failed to answer or otherwise respond to the complaint.   The plaintiffs moved for the entry of default and, on February 4, 2021, the Clerk of the Court certified Burtis' default based upon its failure to answer or otherwise appear in this action.   ECF No. 9.   On June 15, 2021, the plaintiffs moved for a default judgment.   ECF No. 10.

## DISCUSSION

### A.      Legal Standard Governing Defaults

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.   First, the Clerk of the Court enters the party's default.   Then, as here, a motion for a default judgment is made to the district court judge.   A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.   *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's

complaint pertaining to liability are deemed true").   However, even if a plaintiff's claims are

deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint

state valid claims.   *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d

Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's

allegations establish the defendant's liability as a matter of law'" prior to entering default

judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted);

*CIT Bank, N.A. v. Dambra,* No. 14 Civ. 3951, 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25,

2015) ("On a motion for default judgment, the burden is on the plaintiff to establish an

entitlement to recovery, and a failure to plead sufficient facts may require the denial of the

motion."), report and recommendation adopted by, 2015 WL 7430006 (E.D.N.Y. Nov. 20,

2015).   A default also "effectively constitutes an admission that the damages were proximately

caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the

laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York

City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).   The movant need only prove

that the "compensation sought relate[s] to the damages that naturally flow from the injuries

pleaded." *Greyhound,* 973 F.2d at 159.

### B.      Unpaid Contributions

ERISA requires employers to pay fringe benefit contributions pursuant to valid collective

bargaining agreements.   *See* 29 U.SC. § 1145.   Specifically, the statute states that

"[e]very employer who is obligated to make contributions to a multiemployer plan under the

terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not

inconsistent with the law, make such contributions in accordance with the terms and conditions

of such plan or such agreement." *Id*.   The Trust Agreement governing the parties' relationship

provides that if the employer fails to remit contributions by the date due, the employer is liable to

the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per

year) from when the payment was due through the date of payment; (iii) an amount equal to the

greater of (a) interest on the unpaid contributions, or (b) liquidated damages in the form of 20%

of the unpaid contributions; and (iv) the Funds' attorneys' fees and costs.   Bulding Decl., Ex. 1.

Based upon an audit conducted by the Funds' Payroll Auditing Department, the plaintiffs

seek award $26,975.51 in delinquent contributions.   Wong Decl. at ¶¶ 5-10.   In support of their

request for unpaid contributions, the plaintiffs have submitted a copy of the audit for the period

December 31, 2014 through December 31, 2015 performed by Stern C. Wong, a payroll auditor.

*Id.* Ex. 1.   This document reflects that $26,975.51 in unpaid contributions is due and owing with

respect to the audit.   Accordingly, the undersigned respectfully recommends that the plaintiffs'

motion for a default judgment be granted as against Burtis and that they be awarded $26,975.51

in delinquent contributions.

### C.   Withdrawal Liability

"Pursuant to 29 U.S.C. § 1381, in the event an employer completely or partially

withdraws from a pension plan, the employer is liable to the plan for withdrawal liability 'in

order to protect any future benefits that may have vested for employees covered by the plan.'"

*Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.,*

270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017) (citing *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5

(E.D.N.Y. 2001)).   In such instances, "'the [Funds are] vested with authority to determine the

amount of withdrawal liability' and 'must then notify the withdrawing employer of its

withdrawal liability, set a payment schedule, and formally demand payment.'" *Id*. (quoting

*Gesualdi v. Seacost Petroleum Prod., Inc.,* 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015).   "The initial

notification to the employer must occur 'as soon as practicable after an employer's complete or partial withdrawal.'" *Id.* (citing 29 U.S.C. § 1399(b)(1)). After receiving notification, "[v]arious statutory provisions afford the employer the opportunity to contest or challenge the plan's assessment of the employer's liability, or to request more information." *Daniello v. Planned Sys. Integration Ltd.,* No. 07-CV-1729 RRM VVP, 2009 WL 2160536, at *3 (E.D.N.Y. July 17, 2009) (citing 29 U.S.C. §§ 1399(b)(2), 1401). "ERISA [also] requires that disputes regarding the amount or assessment of withdrawal liability be resolved through arbitration." *Id.* (citing 29 U.S.C. § 1401(a)(1)). However, "[i]f the employer fails to make payments consistent with the procedure outlined above, the plan sponsor must again notify the employer of its default and, if not cured within 60 days of receiving notice of nonpayment, 'the fund is entitled to immediate payment of the employer's entire withdrawal liability, in addition to accrued interest on the total outstanding liability.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund*, 270 F. Supp. 3d at 606.

In this case, Burtis is in default within the meaning of Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A) and 29 C.F.R. § 4219.33, based upon its failure to remit interim withdrawal liability payments notwithstanding its obligation to do so pursuant to the CBAs, the Trust Agreement and Sections 515 and 4219(c) of ERISA, 29 U.S.C. §§ 1145 and 1399(c). As indicated above, Burtis permanently ceased to have an obligation to contribute to the plan in October 15, 2015, thereby withdrawing from the Plan. *See* Bulding Decl. ¶ 12. As a result of the withdrawal, Burtis became liable to the plaintiffs for withdrawal liability. *Id.* ¶¶ 13-4. The Fund prepared a report based on the formula set forth in ERISA § 4211(b) and determined the amount of Advance's withdrawal liability to be $544,315.00. *Id.* Ex. 5. It, thereafter,

8

notified Burtis of the amount and demanded payment, but Advance did not respond. [2]  *Id.* ¶ 17.

Nor did Burtis challenge the Fund's assessment.  *See UNITE Nat. Ret. Fund v. Veranda Mktg.*

*Co.*, No. 04 CIV. 9869 (BSJ), 2009 WL 2025163, at \*1 (S.D.N.Y. July 13, 2009) ("If neither

party demanded arbitration within the statutorily prescribed time limits, the amounts demanded

become due and owing on the schedule set forth by the plan sponsor, and the employer is

estopped from challenging any factual determination of the plan sponsor concerning the

assessment of withdrawal liability").   Accordingly, the plaintiffs have satisfied the statutory

prerequisites necessary for an award of withdrawal liability and the entire unpaid amount of

withdrawal liability is now due and owing.   Therefore, the undersigned respectfully

recommends that the plaintiffs' also be awarded $544,315.00 in withdrawal liability.

### D.      Interest

ERISA section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), mandates an award of interest

on unpaid contributions.   The statute provides that "interest on unpaid contributions shall be

determined by using the rate provided under the plan, or, if none, the rate prescribed under

section 6621 of Title 26 [the Internal Revenue Code of 1986.]" 29 U.S.C. § 1132(g)(2).   ERISA

also provides that in any action to compel payment of withdrawal liability, any failure of the

employer to make any withdrawal liability payment within the time prescribed shall be treated in

---

[2] As indicated above, pursuant to the statute, the employer must be notified "as soon as practicable" after
withdrawal, and the notice must include the amount of the liability, a schedule for liability payments, and a demand
for payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1).   In this case, Burtis was not notified for
fifteen months.   However, by failing to request review, Burtis forfeited its right to commence an arbitration
unilaterally—and with it, the right to contest the amount owed or the adequacy of the notice.   "The MPPAA
establishes a strict procedure for resolving disputes over withdrawal liability." *Amalgamated Lithographers of Am.
v. Unz & Co. Inc.,* 670 F. Supp. 2d 214, 225–26 (S.D.N.Y. 2009).   "If there is a dispute, the employer has 90 days
from notification to request a review by the plan sponsor."   *Id.* (citing 29 U.S.C. § 1399(b)(2)(A)).   "After that
request, the employer may initiate arbitration to resolve the dispute."   *Id.* (citing 29 U.S.C. § 1401(a)(1)).   "The
failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the
default is largely a self-inflicted wound." *Id.*

the same manner as a delinquent contribution under 29 U.S.C. § 1445.   *See* 29 U.S.C. § 1451(b).

Thus, in addition to the amount of unpaid contributions and withdrawal liability due and owing,

the plaintiffs are entitled to an award of interest.

When Audit #17-0023 was conducted, the Funds determined that the interest due on the

unpaid contributions calculated through August 17, 2016 was $3,095.04.   Wong Decl., Ex. 1, at

Interest Worksheets.   The plaintiffs have now updated the interest through June 30, 2021, which

amounts to $26,734.93, and continues to accrue at a rate of $13.30 per day.   *See* Muller Decl. ¶¶

30-32.   Pursuant to Article XI, Section 5(d)(2) of the Trust Agreement interest is also due on the

unpaid withdrawal liability from the date payment was due to the date it is paid at the rate of 1.5

percent per month.   *See* Bulding Decl., Ex. 1, p. 36.   The plaintiffs have calculated the interest

due on the unpaid withdrawal liability from May 1, 2020, the day the first payment was due,

through June 30, 2021, at a rate of 18% per annum, which amounts to $424,655.18.   *See* Muller

Decl. ¶¶ 20-22.   Interest continues to accrue in the amount of $268.43 per day from July 1, 2021

through the date judgment is entered.   *Id*.   Accordingly, the undersigned further recommends

that the plaintiffs be awarded interest in the amounts sought.

### E.      Liquidated Damages

29 U.S.C. § 1132(g)(2)(C) and the Trust Agreement also allow for liquidated damages in

an amount equal to the greater of interest on the unpaid contributions or 20% of the unpaid

amounts due.   *See id*. ¶ 14.   Here, the plaintiffs seek an award equal to the interest due on both

the unpaid contributions and unpaid withdrawal liability, which is 26,734.93 and $424,655.18,

respectfully.   The undersigned recommends that liquidated damages be awarded in that

amount.[3]

---

[3] The undersigned does not recommend that a daily interest rate be added to the liquidated damages awards.

### F.      Audit Fees

As noted above, the Funds' auditors conducted an audit of Burtis' books and records for the period commencing December 31, 2014 (Audit #17-0023).   Audit fees are available under Section 1132(g)(2)(E) of ERISA, which provides for "such other legal or equitable relief as the court deems appropriate." *See Martone v. HST Roofing, Inc.*, No. 03 CV 4165, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (awarding audit fees).   Thus, undersigned respectfully recommends that audit fees in the amount of $700.00 be awarded to plaintiffs.   *See* Wong Decl. ¶ 15.

### G.  Attorneys' Fees and Costs

Finally, 29 U.S.C. § 1132(g)(2) and the Trust Agreement also provide for an award of attorneys' fees and costs.   As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)).   The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn.*, 559 U.S. 542, 551 (2010) (emphasis in original).   "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id*. at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184,

11

190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190.   The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).   Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011).    Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552.

The plaintiffs seek $7,221.50 in attorneys' fees and $1,070.20. in costs and have submitted copies of their counsel's contemporaneous time records, reflecting time spent, activities performed as well as costs incurred.   *See* Muller Decl. Ex. 4.   The records reflect that plaintiffs' firm spent a total of 23.80 hours working on this matter.   The work was performed by four attorneys, one of whom has not yet been admitted, a paralegal and a legal secretary.   Arthur J. Muller III is a 2015 graduate of Pace University School of Law with six years of experience representing employee benefit plans.   *Id.* ¶ 41.   Christopher Smith is 1989 graduate of Pace

University School of Law and has been representing employee benefit plans since 1992.  *Id.* ¶

42.  Kevin King and Giuseppe Fioretto, who is no longer with the firm, are 2019 graduates of

Pace University School of Law.  *Id.* ¶ 42.  Michelle Salerno has a degree in paralegal studies

from St. John's University and is an experienced paralegal with over twenty years of litigation

experience.  *Id.* ¶ 43.  Anna Chiarolanza is described as an experienced legal secretary

paralegal who has aided with numerous ERISA litigations.  *Id.* ¶ 44.  Arthur J. Muller billed at

a rate of $410.00 per hour.  *Id.* ¶ 37.  Christopher Smith billed at a rate of $450.00 per hour.

*Id.*  Giuseppe Fioretto billed at a rate of $120.00 per hour.  *Id.*  Kevin King billed at a rate of

$120.00 per hour.  *Id.*  Michelle Salerno and Anna Chiarolanza also billed at a rate of $120.00

per hour.  *Id.*

The Court does not find these rates to be consistent with the rates awarded in this district

in ERISA cases.  Courts in this district typically award hourly rates ranging from $300 to $450

per hour for partners in cases such as this.  *See Annuity, Welfare & Apprenticeship Skill*

*Improvement & Safety Funds of Int'l Union of Operating Engineers , Loc. 15, 15A, 15C & 15D,*

*AFL-CIO v. Genrus Corp.*, No. 20 CV4980 MKB RER, 2021 WL 4755704, at *5 (E.D.N.Y.

Aug. 16, 2021), report and recommendation adopted *sub nom. Annuity, Welfare &*

*Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc.*

*15, 15A, 15C & 15D, AFL-CIO by Callahan v. Genrus Corp.*, No. 20 CV 4980 MKB RER, 2021

WL 3928952 (E.D.N.Y. Sept. 2, 2021).  Similarly, courts in this district generally award hourly

rates of $200–$300 per hour for senior associates and $100–$200 per hour for junior associates.

*See Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co.,* No. CV 19 2344 JS AKT, 2020 WL

1931635, at *13 (E.D.N.Y. Mar. 18, 2020).  In fact, in order to account for the relative

simplicity of ERISA default cases, courts in this district often approve rates that are closer to the

lower end of this range.  *See Gesualdi v. Seacoast Petroleum Prod., Inc., 9*7 F. Supp. 3d 87, 104

(E.D.N.Y. 2015) (citations omitted).   Accordingly, the undersigned recommends that Smith's

rate be adjusted to $400.00, Muller's rate be adjusted to $200.00 and that Giuseppe Fioretto's,

Kevin King's, Michelle Salerno's and Anna Chiarolanza's rates be adjusted to $100.00.

Having determined the reasonable hourly rates to be used in this case, the Court now

turns to the reasonableness of the hours billed.   Courts uphold fee requests in ERISA cases when

they determine that the amount of time expended was not "excessive, redundant or otherwise

unnecessary."   *Trustees of the Metal Polishers Local 8 A-28A Funds, v. Superiro Scaffolding*

*Serv. Inc.*, No. 12-CV-4251, 2013 WL 4095495, at *4 (E.D.N.Y. Aug 9, 2013).   In this case, the

plaintiffs' counsel expended a total of 23.80 hours on this matter, which the Court finds to be

reasonable.   Accordingly, based on the hourly rates suggested above, and the number of hours

billed in this matter, the undersigned recommends that the plaintiffs be awarded attorneys' fees

in the amount of $4.020.00, calculated as follows:

| Christopher Smith | $400.00 | .75 | $300.00 |
| Arthur J. Muller III | $200.00 | 14.20 | $2,840.00 |
| Giuseppe Fioretto | $100.00 | 5.60 | $560.00 |
| Kevin King | $100.00 | .80 | $80.00 |
| Michelle Salerno | $100.00 | .80 | $80.00 |
| Anna Chiarolanza | $100.00 | 1.60 | $160.00 |

In addition, the plaintiffs seek and the undersigned recommends that plaintiffs be

awarded $1,070.20 in costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date

below.   Counsel for plaintiffs shall serve a copy of this Report and Recommendation on the

defendant upon receipt and shall file proof of service with the Court.   Any objections to this

Report and Recommendation must be filed with the Clerk of the Court within 14 days of service.

Failure to file objections within this period waives the right to appeal the District Court's Order.

*See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir.

1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         December 28, 2021

                                                    /s/
                                          _____
                                          ARLENE R. LINDSAY
                                          United States Magistrate Judge